IN THE UNITED STATES DIESTRIC COURT FOR THE
NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| La Energia Nortena, LLC, | § | |
| Adrian Zamarripa, and | § | |
| Humberto Novoa, | § | |
|     *Plaintiffs/Counter-Defendants*, | § | |
| | § | |
| v. | § | Civil Action No.  3:21-CV-02109-1 |
| | § | |
| Moises Cuevas, Jr., | § | |
|     *Defendant/Counter-Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| Azteca Records, LLC, and | § | |
| Azteca Talent Agency, Inc., | § | |
|     *Cross-Defendants*. | § | |

**Counter-Plaintiff Moises Cuevas, Jr.'s Counterclaim, Crossclaim,
and Application for Preliminary Injunctive Relief**

COMES NOW Moises Cuevas, Jr., Defendant and Counter-Plaintiff and files this counterclaim against Humberto Novoa and Adrian Zamarripa and crossclaim against Azteca Records, LLC and Azteca Talent Agency, Inc, and application for preliminary injunctive relief, and would show this Court the following:

**A.  PARTIES**

1. Plaintiff La Energia Nortena, LLC is a Texas limited liability company, whose mailing address is 10606 Shady Trail, Suite 21, Dallas, Texas 75220. As of the filing of this pleading, the registered agent of LEN is Humberto Novoa, and the registered agent's address on file with the Texas Secretary of State is 1111 W. Mockingbird Lane, Ste. 640, Dallas, Texas 75220. The attorney of record for La Energia Nortena in the lawsuit against Moises Cuevas, Jr. is David N.

Calvillo, Texas State Bar No. 03673000, whose address is 1200 Smith Street, Suite 1400, Houston, Texas 77002.

2. Plaintiff and Counter-Defendant Humberto Novoa is an individual residing within the Northern District of Texas, and is represented by Angel V. Mata, State Bar No. 24063940, in Mr. Novoa's claims against Mr. Cuevas. Attorney Mata's address is 512 S. Fitzhugh Ave., Dallas, Texas 75223.

3. Plaintiff and Counter-Defendant Adrian Zamarripa is a *pro se* individual residing within the Northern District of Texas at 908 South Mesquite Street, Arlington, Texas 76010.

4. Defendant and Counter-Plaintiff Moises Cuevas, Jr. is an individual residing at 3611 Borger St., Dallas Texas 75212.

5. Cross-Defendant Azteca Records, LLC is a Texas limited liability company, whose mailing address is 10606 Shady Trail, Suite 21, Dallas, Texas 75220. Upon information and belief, this entity is owned and controlled by Humberto Novoa, who is also the registered agent.

6. Cross-Defendant Azteca Talent Agency, Inc. is a Texas corporation, whose mailing address is 10606 Shady Trail, Suite 21, Dallas, Texas 75220. Upon information and belief, this entity is owned and controlled by Humberto Novoa, who is also the registered agent.

## B. JURISDICTION

7. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1338 because the suit arises under applicable federal statutes relating to copyright law.  This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and also seeks declaratory relief with regard to several legal issues that arise from the language and interpretation of the Copyright Act.

8. This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 1338(a).

9. This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. § 2201 and 2202. This Court also has supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction pursuant to 28 U.S.C. § 1367(a).

## C.  VENUE

10. Venue is proper in this district under 28 U.S.C. §1400(a) because all parties reside or may be found in this district.

## D.  CONDITIONS PRECEDENT

11. All conditions precedent have been performed or have occurred. Pursuant to 17 U.S.C. § 411 and in order to properly bring this copyright matter before the Federal District Court, Moises Cuevas, Jr. has filed and obtained copyright registrations with the U.S. Copyright Office on behalf La Energia Nortena, LLC, who is identified on such registrations as the owner and author of the subject sound recordings in dispute. A copy of such applicable registrations on file with the U.S. Copyright Office is attached to this pleading as **Exhibit A** and incorporated herein by reference as if fully set forth.

## E.  FACTS

### *The Formation of La Energia Nortena*

12. In 2008, Adrian Zamarripa ("**Zamarripa**") and Moises Cuevas, Jr. ("**Cuevas**") founded a musical group professionally known as La Energia Nortena ("**LEN**"). Zamarripa is the

lead singer for LEN. Cuevas is the bass player and musical director for LEN. All other musicians who perform in LEN are contracted talent and have no ownership or interest in LEN.

13. In 2011, after seeing a LEN live performance show, Novoa contacted Zamarripa and Cuevas to propose that he (Novoa) start acting as LEN's talent agent. Zamarripa and Cuevas agreed to allow Novoa to act as LEN's talent agent. Thereafter, Novoa, by and through his company Azteca Talent Agency, Inc. started securing bookings for LEN in exchange for a 33 1/3% commission fee of gross monies received from engagements booked.

14. Subsequent thereto, Novoa proposes to Zamarripa and Cuevas a business proposition wherein the three of would form a Texas limited liability company, called La Energia Nortena, LLC (the "**Company**") to act as a "loan-out" company for the professional services of the musical group LEN. Novoa advises Zamarripa and Cuevas that by forming the Company, the Company could exploit LEN's music and talents through Novoa's other entertainment companies (Azteca Talent Agency, Inc., Azteca Publishing, Inc., and Azteca Records, LLC). No written agreements were ever executed between the Company and any of Novoa's companies (Azteca Talent Agency, Inc., Azteca Publishing, Inc., and Azteca Records, LLC).

### *The Company – La Energia Nortena, LLC*

15. On September 3, 2013, the Company is formed in the State of Texas.

16. The Company is a member-managed LLC and is comprised of 3 members:

1. Humberto Novoa;
2. Adrian Zamarripa; and
3. Moises Cuevas, Jr.

17. The Company does not have an operating agreement, and therefore, the Texas Business Organization Code governs the Company's essential operation. The Company's current address on file with the Texas Secretary of State is 10606 Shady Trail, Ste 21, Dallas, Texas 75220, which

is also the address of record for all other entitles owned or controlled by Humberto Novoa. The Company's Registered Agent is Humberto Novoa.

### *Other Companies owned and controlled Humberto Novoa*

18. Separate and apart from Novoa's co-ownership and management of the Company, upon information and belief, Humberto Novoa solely owns and/or controls the following three entities (collectively, the "**Azteca Group"**):

1. Azteca Records, LLC;
2. Azteca Talent Agency, Inc.; and
3. Azteca Publishing, Inc.

19. The Registered Agent for entity of the Azteca Group is Humberto Novoa. The current address on file for each entity of the Azteca Group is: 10606 Shady Trail, Ste 21, Dallas, Texas 75220 – also the address that Novoa conducts business from on behalf of La Energia Nortena, LLC.

### *The Sound Recordings in Dispute*

20. Since 2011, when Humberto Novoa began representing LEN as its talent agent, LEN by and through La Energia Nortena, LLC (the "**Company**") has created 10 sound recording albums (the "**Albums**"), which embody a total of 126 sound recordings (the "**Masters**").

21. The Masters appear on the following studio album titles by LEN:

1. *Peinsando en Ti* – 2012 release

2. *Sin Restricciones* – 2013 release

3. *Cruzando Territorio* – 2014 release

4. *El Rompecabezas* – 2015 release

5.  *No Hay Quinto Malo* – 2016 release

6.  *El Sueno Americano* – 2018 release

7.  *El Crossover* – 2018 release

8.  *Poco A Poco* – 2019 release

9.  *Saquen las Chelas* – 2019 release

10. *Diez* – 2020 release

22. All of the musicians and personnel who appear on or contributed to the Masters were retained and/or operated under the direction and employment of the Company. Each Master created was also financed by the Company. Accordingly, the Company is the rightful author and claimant of the Masters as a "work-made-for-hire" under 17 U.S.C. §101.

23. Despite such authorship by the Company and/or Mr. Novoa's fiduciary duties as the talent agent for LEN and/or Mr. Novoa's fiduciary and loyalty duties to the Company, when each Album was released and published, Novoa individually and/or on behalf of his other company, Azteca Records, LLC, erroneously and intentionally claimed authorship and ownership of the Masters and Albums by listing Azteca Records, LLC  as the copyright owner when such music was published. Upon information and belief, this claim of authorship and ownership by Novoa was an effort to deprive the Company of its assets and any monies that the Company should have been receiving from such exploitations. While Novoa and Azteca Records, LLC made such adverse public claims against the Company, neither Novoa nor Azteca Records, LLC ever filed for any copyright registrations on the Masters and Albums.

24. Novoa and Azteca Records, LLC use of the Masters and Albums was never licensed in a written instrument by the Company or any of the performers appearing on such Masters including Cuevas. There are no written agreements between LEN and Azteca Records, LLC for the Masters

in dispute. There are no written agreements between the Company and Azteca Records, LLC for the Masters in dispute. There are no written agreements between any of the performers (including Cuevas) and Azteca Records, LLC. No consideration, monies, or royalties have ever been paid by Azteca Records, LLC to the Company for the exploitation of Masters and Albums. Furthermore, Novoa never called or held any Company meetings to allow Cuevas or any member of the Company the opportunity to vote on decisions that Novoa was making on behalf of the Company, especially with regards to the exploitation of the Masters and Albums. To date, despite numerous requests to Novoa and Novoa's attorney of record, Angel Mata, Moises Cuevas, Jr. has never been provided with any documents, explaining and identifying what rights Azteca Records, LLC has to the Albums or Masters, and any monies and accountings that were ever given to the Company in consideration of Azteca Records, LLC's exploitation.

### Humberto Novoa's plan to get rid of Moises Cuevas, Jr. and overtake the Company's assets

25. On or around February 23, 2021, Humberto Novoa called a Company meeting to be held at the Law Offices of Humberto Novoa's attorney, Angel Mata. No purpose was given in advance of such meeting being called. All three Company members (Humberto Novoa, Adrian Zapparripa, and Moises Cuevas, Jr.) were in attendance along with Angel Mata and LEN's road manager Fransico Banda. The meeting began with attorney Angel Mata, erroneously alleging that Moises Cuevas had some previously trouble with the law regarding his possession of a firearm. Despite such false accusations, Moises Cuevas, Jr. has never had any issue with law enforcement regarding his right to carry a firearm. Moreover, Moises Cuevas, Jr. holds a valid and legal permit to carry a firearm issued by the State of Texas. Such false accusation was merely postured by

Attorney Mata on behalf of Novoa and Zapparripa, in an effort to buy out Cuevas' interests in the Company and remove or terminate his membership in the Company.

26. On March 19, 2021, counsel for Cuevas wrote to Novoa and Zapparripa to inquire about the proposed buyout and other related issues that needed to be addressed in an effort to try and amicably resolve the matter. On March 22, 2021, Attorney Angel Mata responded to identify that she represented Humberto Novoa, and the attorneys for Novoa and Cuevas agreed to a phone call at 3 p.m. on Wednesday, March 24, 2021 to further discuss the matter.

27. On March 24, 2021, Attorney Angel Mata proposed that a business valuation be conducted to determine the Company's net worth for a proposed, potential buyout of Cuevas's interest in the Company. During the phone call, counsel for Cuevas also raised issue with Attorney Mata regarding the Mr. Cuevas's claim that the Masters and Albums were the property of the Company and therefore should be considered in the business valuation. Attorney Mata defended and alleged that the Masters and Albums were the property of the Azteca Records, LLC. Attorney Mata advised Mr. Cuevas' counsel during this call that she would provide Mr. Cuevas' attorney with copies of documents and agreements, evidencing and explaining such authorship.

28. On March 28, 2021, the Company retained CPA Bryan Rice located at 32 Burton Hill, Weatherford, TX 76087 to conduct the proposed business valuation. All of the Company's books and accountings are in the exclusive possession of Humberto Novoa and his agents. Mr. Cuevas has only been able to obtain certain alleged financial information that Mr. Novoa has shared and provided during the ongoing business valuation by Mr. Rice.

29. Moreover, despite Mr. Cuevas's attorney's attempt to follow-up with Attorney Angel Mata regarding Mr. Novoa's adverse claims of copyright ownership of the Masters and Albums, by and through Azteca Records, LLC, neither Attorney Mata nor her client Novoa have ever

provided any documents to support their position and claim that Azteca Records, LLC is the copyright owner of the Masters and Albums. Moreover, on April 14, 2021, Attorney Mata subsequently wrote to Mr. Cuevas's attorney refusing to provide any documentation in support of her client's adverse position on such claim by and through Azteca Records, LLC. The present situation has completely usurped any fair or accurate accounting of the Company business valuation or management of the Company that should include the recognition of the Masters and Albums as assets and revenue of the Company.

30. Unknown at the time to Mr. Cuevas, on April 15, 2021, Novoa and Zamparria, individually and on behalf of the Company filed a lawsuit against Moises Cuevas, Jr. in 61st District Court of Harris County Texas, erroneously alleging under blanket allegation with no specific fact stated therein that Mr. Cuevas had caused financial harm to the Company by carrying firearms and harming relations with Plaintiff's clients and business associates.[1] As a result, Novoa and Zamparria pleaded that the Company should be wound down and liquidated, and that Humberto Novoa should be placed in charge of the day-to-day operations during such process, so that the assets of the Company can be sold-off for the appraised value with no monies to be paid to Moises Cuevas, Jr.[2]   To date, such lawsuit has not been served on Mr. Cuevas.

31. The accusations asserted in the state lawsuit brought by Novoa, Zamparria, and the Company against Mr. Cuevas are entirely without merit. Mr. Cuevas has never had any problems with the law regarding his right to carry a firearm, and he has a valid license to carry issued by the State of Texas. LEN is also continuing to tour and play to large and/or sold-out crowds even in the

---

[1] See *La Energia Nortena, LLC, Zamarripa, and Humberto Novoa v. Moises Cuevas*, Cause No. 2021-22525, *Pl.s' Or. Pet.* (Harris County, 61st Dist. Ct., April 15, 2021) (Pleading copy attached as **Exhibit B**)).
[2] See *id.*

absence of Mr. Cuevas' appearance in the active touring group. Thus, the Company is continuing to generate money and do business.

32. Upon information and belief, Mr. Novoa and Mr. Zapparia are acting in concert and with malice to overtake any interest that Mr. Cuevas holds in the Company or the Masters or Albums. Upon recent information and belief, Mr. Novoa and Mr. Zapparia have been splitting the monies received, by and through Azteca Records, LLC, from the exploitation of the Masters and Albums without providing any accounting or paying any monies to the Company or Mr. Cuevas as a member of the Company or contributing performer appearing on the Masters and Albums.

33. Upon information and belief, after the February 24, 2021 meeting wherein Cuevas raised issues regarding the copyright of the Masters and recordings, and accounting and information held, Novoa and Zapparia subsequently decided around March 24, 2021 to stop issuing Mr. Cuevas's weekly ownership check in retaliation and in an attempt to financial harm Mr. Cuevas. No notice was ever given to Mr. Cuevas calling for a Company meeting to propose a future stop to any weekly owner checks, and no notice was ever given when this alleged Company decision took effect. Mr. Cuevas simply stopped receiving his weekly owner membership check. When Mr. Cuevas inquired through counsel why he was not receiving a check, he was told the Company had decided to no longer issue owner checks.

34. Attorney David Calvillo, Texas Bar #03673000, is identified as the attorney of record on behalf of the Company in the initial lawsuit filed in state court against Mr. Cuevas.[3] Mr. Calvillo has made no attempt to contact Mr. Cuevas or Mr. Cuevas' attorney prior to filing this lawsuit against Mr. Cuevas, and therefore, Mr. Calvillo made no reasonable investigation into the facts upon which the state lawsuit is based. The Company also never informed Mr. Cuevas that Mr.

---

[3] *Id.*

Calvillo had been retained on behalf of the Company. To date, Mr. Calvillo has made no attempt to contact Mr. Cuevas or his attorneys despite the filing of an initial lawsuit on behalf of the Company against Mr. Cuevas in state court.

35. Attorney Angel Mata, Texas bar #24063940, is identified as the attorney of record on behalf of Mr. Humberto Novoa in the state lawsuit pleading against Mr. Cuevas.[4] Despite Attorney Mata's periodic correspondence to Mr. Cuevas' attorney regarding the proposed business valuation, subsequent to April 14, 2021, Ms. Mata has never mentioned the filing of Mr. Humberto Novoa's lawsuit against Mr. Cuevas.

36. Based on the foregoing events and facts, Mr. Cuevas has brought this present countersuit before this Federal District Court to address the issues between the parties regarding the copyright ownership of the Masters and Albums, and further address and remedy the intentional and malicious actions of Mr. Novoa and/or Mr. Zapparia, who have conspired, tortiously interfered, and infringed the rights and interests of Company and the rights and interests of Mr. Cuevas.

## F. COUNT 1 – DECLARATORY JUDGEMENT

37. Cuevas hereby incorporates the allegations set forth in paragraphs 1 through 36 above, as though fully set forth herein.

38. Pursuant to 28 U.S.C. § 2201 and 2202, a case of actual controversy within the jurisdiction of this Federal District Court has arisen and now exists between the parties as to who is the true copyright owner of the Masters and Albums.

---

[4] *Id.*

39. Under 17 U.S.C. § 201(a), "Copyright in a work…vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work."[5]

40. Furthermore, under 17 U.S.C. § 201(b), "In the case of a work made for hire, the employer or other person for whom the work was prepared in considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."[6]

41. The Copyright Act specifically defines a "work made for hire" as either:

1) A work prepared by an employee within the scope of his or her employment;

OR

2) A work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.[7]

42. On one hand, Moises Cuevas, Jr. contends that La Energia Nortena, LLC (the "**Company**") is the true copyright owner of the Masters and Albums, because:

1) Such copyright works were prepared as works made for hire within the scope of a person's employment; All of the musicians and personnel who appear on or contributed to the Masters were retained and/or operated under the direction and agency or employment of the Company;

2)  There are no written agreements transferring copyright ownership of the Masters or Albums to Humberto Novoa or Azteca Records, LLC; and

---

[5] 17 U.S.C. §201(a).
[6] 17 U.S.C. §201(b).
[7] 17 U.S.C. 101 (definition of "work made for hire").

3) The US Copyright Office has recognized that the Company is the legal author and claimant of copyright to the Masters and Albums with the Copyright Office as evidenced in the copyright registrations attached in **Exhibit A**.

43. On the other hand, Humberto Novoa and his company, Azteca Records, LLC, erroneously and maliciously claim that Azteca Records, LLC is the copyright owner of the Masters and Albums. But Novoa and Azteca Records, LLC have failed to produce any documents in support of such blanket allegations. Novoa and Azteca Records, LLC have also never paid to the Company any consideration, monies, or royalties for such exploitation of Masters and Albums. Further, all the musicians and personnel who appear on or contributed to the Masters were retained and/or operated under the direction and employment of the Company.

44. Given the present copyright ownership dispute, Moises Cuevas, individually and as a member of the Company requests that the Court provide a judicial determination as to who the copyright owner of the Masters and Albums are, and upon finding that the Company is the true copyright owner, issue a judicial determination that the Company shall reimburse Cuevas for the his costs and expenses incurred in bringing this matter before the Court including the filing fees incurred.

45. Alternatively, in the event the Court finds that the Company is not the copyright owner of the Masters and Albums, Moises Cuevas requests that the Court issue a judicial determination that Moises Cuevas is one of the copyright authors and claimants of such copyrighted works.

46. Such judicial determination of the rights and duties of the parties is necessary at this time because Humberto Novoa by and through Azteca Records, LLC has repeatedly denied the rights and interests of La Energia Nortena, LLC with regards to the Masters and Albums (and rights and interests that Moises Cuevas would have as an owner of the Company) by willfully and

falsely claiming copyright ownership of the Masters and Albums on behalf of Azteca Records, LLC each time a Master or Album was published and released. Further, at present, the Company is engaged in conducting a business valuation of its assets and net worth, but because Humberto Novoa has willfully and wrongfully claimed ownership of the Masters and Albums, such sound recording assets and any monies generated from their exploitation by and through Azteca Records, LLC has not been accounted for and taken into consideration as the property of the La Energia Nortena, LLC. Unless the Court provides declaratory relief to determine who is the true owner of the recordings, Humberto Novoa and Azteca Records, LLC will forever deprive the Company of such sound recording assets and further deprive Moises Cuevas of the benefits of receiving or properly sharing in any of the financial earnings from the exploitation of the Masters and Albums that Cuevas is otherwise entitled to as an owner and member of the Company.

## G.   COUNT 2 – COPYRIGHT INFRINGMENT

47. Cuevas hereby incorporates the allegations set forth in paragraphs 1 through 36 above, as though fully set forth herein.

48. Under § 106 of the Copyright Act, the copyright owner of a sound recording has the exclusive right to reproduce and distribute the sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.[8]

---

[8] 17 U.S.C. 106.

49. "[A copyright]…owner may sue for infringement those who exploit the creative work without permission or assignment."[9] "The right to prosecute an accrued cause of action for infringement is also an incident of copyright ownership."[10]

50. "[To the extent that there is a joint work of copyright, the right to prosecute]…may be exercised independently of co-owners; a joint owner is not required to join his other co-owners in an action for infringement."[11]

51. "A co-owner's ability to grant licenses to third parties unilaterally will therefore depend on the type of licenses granted. There are **two general categories of licenses**: **non-exclusive licenses**, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and **exclusive licenses**, which grant to the licensee the exclusive right -- superior even to copyright owners' rights -- to use the copyrighted material in a manner as specified by the license agreement."[12]

52. "A co-owner may grant a *non-exclusive* license to use the work unilaterally, because his co-owners may also use the work or grant similar licenses to other users and because the non-exclusive license presumptively does not diminish the value of the copyright to the co-owners."[13]

---

[9] *Davis v. Blige*, 505 F.3d 90, 98-99 (2d Cir. 2007); *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *Knickerbocker Toy Co., Inc. v. Azrak-Hamway Int'l., Inc.,* 668 F.2d 699, 702 (2d Cir. 1982) (stating that "[t]o prevail on a claim of copyright infringement, a plaintiff must show both ownership of a valid copyright and copying").

[10] *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (*citing ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991)).

[11] *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (*citing see* 17 U.S.C. § 501(b) (noting that a court "*may* require" an owner of a copyright to serve notice on a person who is shown "to have or claim an interest in the copyright" and "*may* require the joinder . . . of any person having or claiming an interest in the copyright") (emphasis added); *Edward Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268, 269 (2d Cir. 1944) ("It was early decided that the holder of the legal title to a copyright might sue without joining others who had an equitable interest in the copyright."); *Copyright.net Music Publ'g LLC v. MP3.com*, 256 F. Supp. 2d 214, 218 (S.D.N.Y. 2003) (holding that copyright infringement plaintiffs were not obligated to join alleged co-owners of compositions at issue)).

[12] *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (emphasis added).

[13] *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) (*citing See Meredith v. Smith*, 145 F.2d 620, 621 (9th Cir. 1944) (noting that a "co-owner had the right to give permission" for non-exclusive use of a copyrighted work); 1 *Nimmer* § 6.10[A], 6-34.)).

**In any event, a co-owner who grants a non-exclusive license is accountable to his co-owner for income gained by the grant of the license.**[14]

53. "An *exclusive* license, on the other hand, conveys an ownership interest. Accordingly, an exclusive licensee may sue others for infringement, including the licensor if the licensor infringes on the exclusive right he granted the licensee. Because no one other than the exclusive licensee may exercise the right specified by the exclusive license agreement, the interests of the other co-owners to use or grant non-exclusive licenses to the work are necessarily impaired. An exclusive license thus destroys the value of a copyright to the copyright owners, to the extent that the licensed rights cannot be used or exploited by the copyright owners. Unlike a transfer of one co-owner's copyright interest to another person, which conveys only the co-owner's share of that interest, an exclusive license grants all co-owners' shares of a particular copyright interest to the exclusive licensee. **Accordingly, a co-owner cannot unilaterally grant an exclusive license.**"[15]

54. In the event the Court's determines that La Energia Nortena, LLC (the "**Company**") is the sole and exclusive owner of the Masters and Albums, Moises Cuevas, Jr. also brings claims of copyright infringement, on behalf of the Company and his individual interests as a member of the Company, against Humberto Novoa and Azteca Records, LLC for intentionally and willfully claiming adverse ownership of the Masters and Albums, exploiting the Masters and Albums outside the scope of any licensed right that Azteca Records, LLC, may have had, if any, and withholding monies due and payable to the Company for the reproduction, distribution, and

---

[14] *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) (*citing Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 223 F.2d 252, 254 (2d Cir. 1955)).

[15] *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (emphasis added) (*citing Maurel v. Smith*, 271 F. at 216 (2nd Cir. 1921) ("Where two or more persons have a common interest in a property, equity will not allow one to appropriate it exclusively to himself, or to impair its worth as to others."); 1 *Nimmer* § 6.11 (noting prohibition on one co-owner granting an **exclusive license** without consent of other co-owners)).

exploitation of the Masters and Albums in violation of any licensed right that Azteca Records, LLC had to otherwise reproduce, distribute, and exploit the Masters and Albums.

55. Alternatively, in the event that the Court's determines that La Energia Nortena, LLC (the "**Company**") is not the true owner of the Masters and Albums, but instead that the ownership and authorship of the Masters and Albums is held jointly and equally in undivided shares by each of the contributing individuals, including Cuevas, then Cuevas brings claims of copyright infringement against Novoa and Azteca Records, LLC for:

1) failing to account and pay Cuevas (his share of monies owed based on Cuevas' individual ownership of the Masters and Albums) for any exploitations of the Masters and Albums based on any non-exclusive uses; and

2) for entering into certain third-party exclusive licensing agreements with Universal Music Group or its subsidiary labels without Cuevas' permission regarding the Masters embodied on the Albums, specifically *Poco A Poco*, *El Sueno Americano*, *No Hay Quinto Malo*, and *El Rompecabezas*.

## H.  COUNT THREE - BREACH OF FIDUCIARY DUTY

### *Against Humberto Novoa and Adrian Zamarripa*

56. Cuevas hereby incorporates the allegations set forth in paragraphs 1 through 36 above, as though fully set forth herein.

57. "The elements of a claim for breach of fiduciary duty are: "(1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) the defendant's breach of

the fiduciary duties arising from that relationship; and (3) injury to the plaintiff, or benefit to the defendant, resulting from that breach."[16]

58. Texas law has "…long recognized as a matter of common law that the relationship between partners is fiduciary in character, and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise."[17] Accordingly, "a corporate fiduciary owes a duty of loyalty and 'is under obligation not to usurp corporate opportunities for personal gain.'"[18]

59. Humberto Novoa, acting as the talent agent of the musical group La Energia Nortena, by and through his company Azteca Talent Agency, LLC, has a fiduciary duty of loyalty to Cuevas and the other band members of La Energia Nortena to engage in business dealings that would benefit the best interest of the musical group. Humberto Novoa breached his fiduciary duty of loyalty and ceased to act on behalf of the band's interest when he actively advised Cuevas and Zamarripa that the three (i.e. Novoa, Zamarripa, and Cuevas) should form La Energia Nortena, LLC (the "Company") to act and operate on behalf of the band. While the formation of an entity to act and operate on behalf of a musical group is common and is known as a "loan out company" within the music industry, what is not common is for an agent serving a musical group to also make himself an owner of the entity (i.e. an owner of his principal), which is what occurred when

---

[16] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (c*iting Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

[17] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (*citing and quoting Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998)).

[18] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020)(*citing and quoting Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)); *see also CBIF, Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 Tex. App. LEXIS 3605, 2017 WL 1455407, at *14-15 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) (holding that a breach of fiduciary duty was shown by evidence that a partner pursued its own self-interest by threatening its partners with total loss unless paid more); *see also Darocy v. Abildtrup,* 345 S.W.3d at 138 (Tex. App.—Dallas 2011, no pet.) (holding that "fail[ure] to manage the day-to-day operations of the ventures with loyalty and fidelity" was evidence of a breach of fiduciary duty).

Novoa filed and form the Company with the Texas Secretary of State and named himself as one of the Company's members. By forming the Company and making himself a member of the Company, Humberto Novoa no longer was looking after the interest of his principal (i.e, the musical group La Energia Nortena) in his business dealings on behalf of the band, but instead, by forming the Company, Humberto Novoa become part of the principal. Because of such self-dealings Humberto Novoa was no longer serving the band's interest, but instead was serving his own interests over those of his principal (i.e., LEN).

60. Humberto Novoa breached his fiduciary duty to the Company (and to Cuevas as a member of the Company, Cuevas as a band member of the La Energia Nortena, or alternatively Cuevas as an author or performer on the Master or Album) when he (Novoa) took control over the management the Company, which was formed as a member-managed Company, and then failed to call any Company meetings regarding decisions that he was making on behalf of the Company and/or engage and advise Cuevas of any of the business decisions that he (Novoa) was making.

61. Humberto Novoa breached his fiduciary duty to the Company (and to Cuevas as a member of the Company, Cuevas as a band member of the La Energia Nortena, or alternatively Cuevas as an author or performer on the Master or Album) by tendering the possession of the Masters and Albums to Novoa's company Azteca Records, LLC to exploit for Novoa's own personal gain.

62. Humberto Novoa breached his fiduciary duty to the Company (and to Cuevas as a member of the Company, Cuevas as a band member of the La Energia Nortena, or alternatively Cuevas as an author or performer on the Master or Album) by failing to disclose to account back to Company or Cuevas for any monies received from Novoa's exploitation of the Masters and Albums by and through Azteca Records, LLC.

63. Humberto Novoa breached his fiduciary duty to Company and Cuevas as a member of the Company by refusing and failing to tender any information and documentation regarding Novoa's exploitation of the Masters or Albums despite multiple requests by Cuevas.

64. Humberto Novoa breached his fiduciary duty to Cuevas as a member of the Company by intentionally refusing to allow the Company to account and pay Cuevas for Cuevas' weekly member share of the Company's earning on and after March 2021 in an effort to financially harm Cuevas, after Cuevas inquired into Novoa's business dealings on behalf of the Company.

65. Adrian Zamarripa breached his fiduciary duty to the Company and to Cuevas by conspiring with Novoa in Novoa's plan to self-deal with Company assets and profits by and through Novoa's Azteca Group in an effort to cut the Company and Cuevas out of certain earning and profits. Upon information and belief, Novoa, by and through Azteca Records, LLC, has been paying Zamarripa monies generated from the exploitation of the Masters and Albums.

66. Accordingly, Cuevas seeks the recovery of actual and exemplary damages against Novoa and Zamarripa for the breach of fiduciary duty under Tex. Civ. Prac. & Rem. Code § 41.008.

## I.   COUNT 4 - BREACH OF FIDUCIARY DUTY

### *Against Azteca Records, LLC and Azteca Talent Agency, Inc.*

67. Cuevas hereby incorporates the allegations set forth in paragraphs 1 through 36 above, as though fully set forth herein.

68. "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and

is liable as such."[19]  "The elements of a knowing-participation claim are: (1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty."[20]  "Knowing participation in breach of fiduciary duty is a derivative claim, requiring an underlying breach of fiduciary duty, in which the defendant knowingly participates."[21]

69. As alleged in the previous section "H" of this pleading and included herein by reference, Humberto Novoa, under numerous circumstances cited, breached his fiduciary duty to the Company and to Cuevas as a member through fraud and concealment. Mr. Novoa solely owns and operates Azteca Records, LLC and Azteca Talent Agency, LLC. Mr. Novoa used Azteca Records, LLC and Azteca Talent Agency, Inc. merely as the framework for his corrupt self-dealings against the Company and Cuevas. Accordingly, Azteca Records, LLC and Azteca Talent Agency, Inc. by and through, Humberto Novoa were completely aware of the self-dealings that were transpiring in the corrupt business dealings that Humberto Novoa was coordinating for his own personal gain. Nevertheless, Azteca Records, LLC and Azteca Talent Agency, Inc. continued to transact business with the Company under the complete direction and control of Humberto Novoa, who was also running the Company for Humberto Novoa's own personal gain.

70. Accordingly, Cuevas seeks the recovery of actual and exemplary damages against Azteca Records, LLC and Azteca Talent Agency, Inc. for the breach of fiduciary duty under Tex. Civ. Prac. & Rem. Code § 41.008.

---

[19] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (*citing Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (Tex. 1942)).
[20] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (*citing Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, no pet.)).
[21] *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (*citing See Kinzbach Tool Co.*, 160 S.W.2d at 514.).

## J.  COUNT 3 – APPLICATION FOR PRELIMINARY INJUNCTION

71. Cuevas hereby incorporate the allegations set forth in paragraphs 1 through 36 above, as though fully set forth herein. At present, Novoa and Zamarripa seek to wind down and terminate the Company.[22]

72. Moises Cuevas, Jr. will likely suffer irreparable injury if the Court does enjoin and prevent any proposed dissolution or wind down of Company by Novoa or Zamarripa pending Court's determination on the ownership of the Masters and Albums, and further enjoin and prevent all parties to this lawsuit from selling, transferring, or conveying any interests in the Masters and Albums pending Court's determination on the ownership of the Masters and Albums.

73. If the Company under the direction of the Novoa or Zamarripa was allowed to dissolve and wind down the Company without issuing a declaratory judgment on who is the owner of the Masters, Humberto Novoa and Azteca Records, LLC would forever deprive the Company of properly accounting for such assets during any proposed wind down, and further deprive Cuevas, as a member of the Company, of receiving any financial earnings from the exploitation of the Masters and Albums by the Company. In other words, if the Court allowed Novoa or Zamarripa to proceed with their proposed wind down of the Company, Novoa, Zamarripa, Azteca Records, LLC (aka Humberto Novoa), and Azteca Talent Agency, Inc. (aka Humberto Novoa) would make free with the tortious and fraudulent conversion of Company assets (i.e., the Masters and Albums) – the circumstances of which would be impossible to remedy if the Company was no longer in existence and the Court ultimately found that such assets belonged to the Company.

---

[22] *La Energia Nortena, LLC, Zamarripa, and Humberto Novoa v. Moises Cuevas*, Cause No. 2021-22525, *Pl.s' Or. Pet.* at ¶ 15 (Harris County, 61ˢᵗ Dist. Ct., April 15, 2021) (Pleading copy attached as **Exhibit B**) ("Plaintiffs seeks court intervention for a winding down of La Energia Nortena LLC.").

74. There is no adequate remedy at law in the interim that would otherwise protect the interests of the Company, because once a Company is dissolved and terminated, the Company cannot be reopened to provide for the accounting of assets that should have been taken into consideration during the proposed wind down.

75. There is a substantial likelihood that Cuevas will prevail in his individual claims brought on behalf of the Company's interests given the detailed facts alleged herein, which will be proven at a trial on the merits of this case.

76. The harm faced by Cuevas and the Company outweighs the harm that would be sustained if the Novoa and Zamarripa were able to wind down the Company or act to sell or transfer the assets by and through Azteca Records, LLC or Azteca Talent Agency, Inc.

77. Issuance of a primary injunction would not adversely affect the public interest, because the Masters and Albums that are currently in dispute could continue to be exploited by Azteca Records, LLC subject to the Court's ultimate ruling on the issue.

78. Cuevas is willing to post bond in the amount that Court deems appropriate for such proposed temporary restraining order.

79. Cuevas asks the Court to set his application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue the proposed preliminary injunction.

## J.  DAMAGES

80. Pending the Court's determination on who the copyright holder is of the Masters and Albums, Company or Cuevas is entitled to copyright infringement damages under 17 USC § 504(a) for either:

1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

2) statutory damages, as provided by subsection (c).[23]

81. Specifically, Cuevas, individually and on behalf of the Company, seeks the recovery of statutory damages for the willful infringement by Novoa and Azteca Records, LLC as provided for under 17 USC § 504 (c)(2) at $150,000.00 for each infringement of the 126 Masters contained within the 10 Album works, equally the aggregate recovery amount of $18,900,000.00.

82. To the extent, the Court finds that any of the Masters are joint works authored by Cuevas and authors who are defendants to Cuevas claims herein, Cuevas seeks the recovery of his share of the monies generated from such co-defendants' non-exclusive licensed exploitations of the Masters, and to the extent that such exploitations were licensed on an exclusive basis, Cuevas seeks statutory infringement damages for willful infringement under 17 USC § 504(c)(2).

83. Additionally, Cuevas seeks the recovery of actual and exemplary damages against Novoa, **Zamarripa**, Azteca Records, LLC, and Azteca Talent Agency, Inc. for the breach of fiduciary duty under Tex. Civ. Prac. & Rem. Code § 41.008.

## K.   ATTORNEY'S FEES & COSTS

84. Moises Cuevas, Jr. is entitled to an award of attorney's fees and costs against under 17 U.S.C. § 505 as the prevailing party, individually and/or on behalf of the claims asserted by Cuevas on the Company's behalf.

---

[23] 17 U.S.C. § 504(a).

## L.      DEMAND FOR JURY

85. Counter-Plaintiff Cuevas asserts his right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## L.   PRAYER

For the reasons stated herein, Counter-Plaintiff Moises Cuevas asks for judgment against counter-defendant and cross-defendant parties as follows:

a)   Declaratory judgment finding that La Energia Nortena, LLC or Moises Cuevas is the rightful copyright owner and author of the Masters and Albums, and upon such finding that Company shall reimburse Cuevas for the his costs and expenses incurred in bringing this matter before the Court including the filing fees incurred.;

b)   The Court to find that Humberto Novoa and Azteca Records, LLC are liable for copyright infringement of the Masters and Albums and are therefore liable to the Company or Cuevas for the greater of either: the copyright owner's actual damages and any profits attributable to such infringements, or the maximum statutory damages, as authorized by 17 U.S.C. §504(c);

c)   The Court issue a preliminary injunction to stop any proposed wind down or dissolution of the Company pending the outcome of the Court's decision in this matter;

d)   The recovery of Cuevas' actual damages and exemplary damages against Humberto Novoa, Adrian Zamarripa, Azteca Records, LLC, and Azteca Talent Agency, LLC for breach of their fiduciary duties to Cuevas;

e) The recovery of Cuevas' attorney's fees and costs as provided under 17 USC § 505; and

f) Any and all other relief, either at law or in equity, to which Cuevas shows himself justly entitled.

Respectfully submitted,

_____
David Chase LanCarte
Texas Bar No. 24082464
LanCarte Law, PLLC
2817 West End Ave., Suite 126-276
Nashville, Tennessee 37203
Tel: 214-935-2430
Fax: 214-934-2450
chase@lancartelaw.com

/s/ Marcus C. Marsden, Jr.
_____
MARCUS C. MARSDEN, JR.
State Bar No. 13014200
marcus@colanerifirm.com
THE COLANERI FIRM, P.C.
524 E. Lamar Blvd., Suite 280
Arlington, Texas 76011
Tel: 817-640-1588
Fax: 817-640-1680

**ATTORNEYS FOR DEFENDANT &
COUNTER-PLAINTIFF
MOISES CUEVAS, JR.**

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have forwarded a true and correct copy of the above and foregoing **Defendant Moises Cuevas, Jr.'s Counterclaim, Crossclaim, and Application for Preliminary Injunction** in this cause to all counsel of record for the represented parties and to the pro se party as listed below on this 2nd day of September, 2021.

David N. Calvillo
TX State Bar No. 03673000
1200 Smith Street, Suite 1400
Houston, TX 77002
*Attorney for Plaintiff La Energia Nortena, LLC*

Angel V. Mata
TX State Bar No. 24063940
512 S. Fitzhugh Avenue
Dallas, TX 75223
*Attorney for Plaintiff Humberto Novoa*

Adrian Zamarripa
908 South Mequite Street
Arlington, TX 76010
*Pro Se*

_____
Davis Chase LanCarte